United States District Court
Southern District of Texas
**ENTERED**
April 09, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALVIN EILAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-23-1272 |
| WESTLAKE FINANCIAL SERVICES LLC | § | |
| and EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Alvin Eiland ("Plaintiff") brought this action against Westlake Financial Services LLC ("Westlake") and Experian Information Solutions, Inc. ("Experian"), alleging violations of the Fair Credit Reporting Act and seeking damages.[1] Pending before the court is Defendant Westlake Services, LLC dba Westlake Financial Services' Motion for Summary Judgment ("Westlake's MSJ") (Docket Entry No. 23). For the reasons stated below, Westlake's MSJ will be granted in part and denied in part.

### I. Background

Plaintiff alleges two claims against Westlake for violating 15 U.S.C. § 1681s-2(b), which governs investigation and reporting

---

[1]Complaint, Docket Entry No. 11, p. 1 ¶ 1. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

duties of persons who furnish credit information to consumer reporting agencies.² Plaintiff alleges that Westlake violated § 1681s-2(b) by "publishing [] inaccurate credit information to a credit reporting agency; by failing to fully and properly investigate Plaintiff'[s] dispute reported by Experian . . .; by failing to review all relevant information regarding same; and by failing to correctly report results of an accurate investigation to the credit reporting agencies."³ Plaintiff seeks actual, statutory, and punitive damages and costs and attorney's fees.⁴ Plaintiff voluntarily dismissed his claims against Experian.⁵

Westlake filed its MSJ on February 29, 2024, Plaintiff responded, and Westlake replied.⁶ Westlake argues that there is no evidence that it violated § 1681s-2(b) and, in the alternative, that any violation was not willful or negligent.⁷ Plaintiff

---

²Id. at 4-5.  Plaintiff's first claim alleges a willful violation, and his second claim alleges negligent violation of Westlake's investigation and reporting duties.  Id.

³Id. at 4 ¶ 30.

⁴Id. at 6.

⁵Notice of Voluntary Dismissal with Prejudice as to Defendant Experian Information Solutions, Inc., Docket Entry No. 7.

⁶Westlake's MSJ, Docket Entry No. 23; Plaintiff's Response in Opposition to Defendant Westlake [Financial] Services, LLC's Motion for Summary Judg[]ment ("Plaintiff's Response"), Docket Entry No. 24; Defendant Westlake Services, LLC dba Westlake Financial Services' Reply in Support of Motion for Summary Judgment ("Westlake's Reply"), Docket Entry No. 25.

⁷Westlake's MSJ, Docket Entry No. 23, pp. 7, 9.

responds that the evidence shows that Westlake failed to conduct adequate investigations and that Westlake acted willfully and negligently.[8]

## II.  The Fair Credit Reporting Act

Congress passed the Fair Credit Reporting Act to require consumer reporting agencies to adopt procedures for use of consumer credit information "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information[.]"  See 15 U.S.C. § 1681(b).  A consumer reporting agency ("CRA") is defined as a "person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties[.]"  Id. § 1681a(f).

When a consumer disputes "the completeness or accuracy of any item of information contained in [the] consumer's file[,]" the CRA must within 30 days "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file[.]"  Id. § 1681i(a)(1)(A).  The CRA must also notify the provider of the disputed information and provide it with all information relevant to the dispute within five days.  Id. § 1681i(a)(2)(A).

---

[8]Plaintiff's Response, Docket Entry No. 24, pp. 3, 5.

The statute also places obligations on furnishers that provide consumer credit information to a CRA. See id. § 1681s-2 ("Responsibilities of furnishers of information to consumer reporting agencies"). Relevant to Plaintiff's claims, § 1681s-2(b) requires:

> After receiving notice pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-
>
>> (A) conduct an investigation with respect to the disputed information;
>>
>> (B) review all relevant information provided by the consumer reporting agency . . .
>>
>> (C) report the results of the investigation to the consumer reporting agency;
>>
>> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . .; and
>>
>> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete . . . as appropriate . . . promptly-
>>
>>> (i) modify that item of information;
>>>
>>> (ii) delete that item of information; or
>>>
>>> (iii) permanently block the reporting of that item of information.

Id. § 1681s-2(b)(1). The statute authorizes consumers to seek damages for negligent or willful violations of § 1681s-2(b). For negligent violations, a consumer may recover actual damages and costs and reasonable attorney's fees. Id. § 1681o(a). For willful violations, a consumer may recover "(1)(A) any actual damages . . .

or damages of not less than $100 and not more than $1,000; . . . (2) such amount of punitive damages as the court may allow;" and (3) costs and reasonable attorney's fees.  Section 1681n(a).

### III. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).[9]  Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

"[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.  If the movant does so, "the burden shifts to the nonmovant to show that a summary judgment should not be granted." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir.

---

[9] Summary judgment evidence need not be in admissible form as long as it can be presented in admissible form at trial. Fed. R. Civ. P. 56(c)(2); Maurer v. Independence Town, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.").

1998). "'The burden on the nonmoving party is not a heavy one; the nonmoving party simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.'" Swope v. Columbian Chemicals Co., 281 F.3d 185, 197 (5th Cir. 2002) (quoting 10A Wright, Miller & Kane, Federal Practice and Procedure § 2727, at 490 (3d ed. 1998)).[10] But "'[a] mere scintilla of evidence is insufficient to present a question for the jury.'" Rex Real Estate I, L.P. v. Rex Real Estate Exchange, Inc., 80 F.4th 607, 616 (5th Cir. 2023). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

### IV.  Summary Judgment Evidence

Plaintiff bought a car in July of 2018 financed by a Westlake auto loan.[11] In August of 2019 Plaintiff was involved in an automobile accident, and the car had to be towed.[12] Westlake was notified that the vehicle had been towed and paid the towing company's fees. Westlake reported this occurrence as a

---

[10] See also 10A Wright, Miller, & Kane, Federal Practice & Procedure § 2727.2, at 501 (4th ed. 2016) (same).

[11] Audiovisual Deposition of Tracy Bergiman ("Bergiman Depo."), Exhibit 2 to Westlake's MSJ, Docket Entry No. 23, p. 125 lines 9-16.

[12] Id. at 165 lines 22-25, p. 166 lines 1-3.

repossession to the CRAs.[13] Westlake acknowledges that the reported repossession had nothing to do with Plaintiff's payment history.[14]

On February 16, 2021, Westlake received notice of a dispute that Plaintiff submitted to TransUnion.[15] According to Westlake's dispute system, Plaintiff claimed that the repossession was not accurate.[16] Westlake "[u]pdated [the] disputed account information" to show that Plaintiff was current on his payments but did not remove the repossession.[17]

On July 7, 2021, Westlake received notice of a dispute that Plaintiff submitted to Equifax.[18] Westlake's records characterize Plaintiff's dispute as a claim that the account was not his.[19] Westlake responded to Equifax that the "[d]isputed information [was] accurate[.]"[20]

---

[13] Id. at 166 lines 15-20.

[14] Westlake's MSJ, Docket Entry No. 23, p. 2.

[15] Declaration of Tracy Bergiman ("Bergiman Decl."), Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 14 ¶ 3; Dispute Record, Exhibit 1(A) to Westlake's MSJ, Docket Entry No. 23, p. 19.

[16] Dispute Record, Exhibit 1(A) to Westlake's MSJ, Docket Entry No. 23, p. 19.

[17] Id.

[18] Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, pp. 14-15 ¶ 4.

[19] Id.; Dispute Record, Exhibit 1(B) to Westlake's MSJ, Docket Entry No. 23, p. 24.

[20] Dispute Record, Exhibit 1(C) to Westlake's MSJ, Docket Entry No. 23, p. 29.

On August 20, 2021, Westlake received notice of a dispute that Plaintiff submitted to Equifax.[21] Westlake's records characterize Plaintiff's dispute as a claim that the account was fraudulently opened.[22] Westlake responded to Equifax that the disputed information was accurate.[23]

On August 24, 2021, Westlake received notice of a dispute that Plaintiff submitted to Experian.[24] Plaintiff disputed his "present/ previous Account Status/Payment Rating/Account History[.]"[25] Westlake updated the disputed account status to show that Plaintiff was current on his payments but did not remove the repossession.[26]

On August 27, 2021, Westlake responded to a complaint that Plaintiff filed with the Consumer Financial Protection Bureau ("CFPB").[27] Westlake stated to plaintiff that "[u]pon review of the tradeline, it has been determined Westlake Financial is not reporting your account accurately to the three credit reporting

---

[21] Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 15 ¶ 5; Dispute Record, Exhibit 1(C) to Westlake's MSJ, Docket Entry No. 23, p. 29.

[22] Id.

[23] Id.

[24] Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 15 ¶ 6; Dispute Record, Exhibit 1(D) to Westlake's MSJ, Docket Entry No. 23, p. 34.

[25] Id.

[26] Id.

[27] Correspondence Re: CFPB Complaint #210817-7100116, Exhibit A to Plaintiff's Response, Docket Entry No. 24, p. 9.

agencies, modifications were made to remove the repossession from your credit history."[28]

On August 28, 2021, Westlake responded to a dispute that it had received from Plaintiff.[29] Westlake stated that "[a]s required by law, we have reviewed our account records. During our investigation, we determined that a modification to the tradeline being reported on your credit report is warranted. Therefore we have modified our records, contacted the credit reporting agency, and furnished the modified information to them."[30]

On February 9, 2022, Westlake received notice of a dispute that Plaintiff filed with Experian.[31] According to Westlake's records, Plaintiff disputed his "present/previous Account Status/Payment Rating/Account History[.]"[32] Westlake updated the account to show that Plaintiff was current on his payments but did not remove the repossession.[33]

---

[28] Id.

[29] Correspondence RE: Direct Dispute of Credit Information, Exhibit 1(E) to Westlake MSJ, Docket Entry No. 23, p. 39.

[30] Id.

[31] Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 15 ¶ 9; Dispute Record, Exhibit 1(G) to Westlake's MSJ, Docket Entry No. 23, p. 56.

[32] Id.

[33] Id.

On February 12, 2022, Westlake received notice of a dispute that Plaintiff filed with TransUnion.[34] Westlake's records characterize Plaintiff's dispute as claiming that the "Claims Company will Change."[35] The Westlake employee who processed the dispute — Tracy Bergiman — made a note that she was "[u]nable to authenticate documentation dated 08 27 2021[.]"[36] Westlake responded to TransUnion that Plaintiff's "[d]ispute [was] not specific."[37]

On March 6, 2022, Westlake received notice of a dispute that Plaintiff filed with Experian.[38] Plaintiff's dispute stated: "THIS ACCT HAS AN INCORRECT STATUS. IT SHOULD NOT BE []DEEMED REPOSSESSION[.] YOU SENT ME A LETTER EXPLAINING IT WAS A MISTAKE[.] I ATTACHED THAT LETTER. PLEASE CHANGE THIS TO CURRENT. [IT] IS INACCURATE AND AFFECTING ME[.]"[39] Westlake updated the

---

[34]Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 15 ¶ 10; Dispute Record, Exhibit 1(H) to Westlake's MSJ, Docket Entry No. 23, p. 61.

[35]Id.

[36]Dispute Record, Exhibit 1(H) to Westlake's MSJ, Docket Entry No. 23, p. 61.

[37]Id.

[38]Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 16 ¶ 11; Dispute Record, Exhibit 1(I) to Westlake's MSJ, Docket Entry No. 23, p. 66.

[39]Dispute Record, Exhibit 1(I) to Westlake's MSJ, Docket Entry No. 23, p. 66. The Dispute Record appears to have had 18 attachments, but they are not included in the parties' summary judgment evidence.

account to show that Plaintiff was current on his payments but did not remove the repossession.[40]

On June 21, 2022, Westlake sent a request to Equifax, Experian, and TransUnion requesting that they update the account to show that Plaintiff was current on his payments.[41] Westlake sent two additional requests on July 8 and 21, 2022, to the three agencies asking that they update the account as current.[42]

On August 10, 2022, Westlake received notice of a dispute that Plaintiff submitted to Experian.[43] Plaintiff's dispute stated: "THIS ACCOUNT WAS INCORRECTLY LISTED AS A REPOSSESSION WHICH WAS LATER CORRECTED BY THE LENDER. THE REPOSSESSION STATUS SHOULD ALSO BE REMOVED FROM THE 2019 PAYMENT HISTORY."[44] Westlake responded to Experian that Plaintiff's "dispute [was] not specific."[45]

---

[40] Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 16 ¶ 11; Dispute Record, Exhibit 1(I) to Westlake's MSJ, Docket Entry No. 23, p. 66.

[41] Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 16 ¶ 12; AUD Form, Exhibit 1(J) to Westlake's MSJ, Docket Entry No. 23, p. 71.

[42] Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 16 ¶ 13-14; AUD Form, Exhibit 1(K) to Westlake's MSJ, Docket Entry No. 23, p. 73; AUD Form, Exhibit 1(L) to Westlake's MSJ, Docket Entry No. 23, p. 75.

[43] Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 16 ¶ 15; Dispute Record, Exhibit 1(M) to Westlake's MSJ, Docket Entry No. 23, p. 77.

[44] Dispute Record, Exhibit 1(M) to Westlake's MSJ, Docket Entry No. 23, p. 77.

[45] Id.

On September 1, 2022, Westlake received notice of a dispute that Plaintiff filed with Experian.[46] Plaintiff disputed his "present/previous Account Status/Payment Rating/Account History[.]"[47] Westlake updated the disputed account status to show that Plaintiff was current on his payments but did not remove the repossession.[48]

On January 10, 2023, Westlake received notice of a dispute that Plaintiff submitted to Experian.[49] Plaintiff claimed that his credit report had "inaccurate information."[50] Westlake's records show that at that time Plaintiff had paid off the loan.[51] Westlake responded to Experian that the disputed information was accurate.[52]

At some point between January 10 and 26, 2023, Westlake successfully removed the repossession from Plaintiff's credit report.[53]

---

[46]Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 16 ¶ 16; Dispute Record, Exhibit 1(N) to Westlake's MSJ, Docket Entry No. 23, p. 82.

[47]Id.

[48]Id.

[49]Bergiman Decl., Exhibit 1 to Westlake's MSJ, Docket Entry No. 23, p. 16-17 ¶ 17; Dispute Record, Exhibit 1(O) to Westlake's MSJ, Docket Entry No. 23, p. 87.

[50]Id. The Dispute Record appears to have had 20 attachments, but they are not included in the parties' briefing.

[51]Dispute Record, Exhibit 1(O) to Westlake's MSJ, Docket Entry No. 23, p. 88.

[52]Id. at 87.

[53]Compare id. at 88 with Bergiman Depo., Exhibit 2 to Westlake's MSJ, Docket Entry No. 23, p. 170 lines 11-22.

Westlake employee Tracy Bergiman testified that the repossession was accurately reported.[54] Bergiman testified that the designation includes "impound" repossessions, such as when a vehicle is "involved in an accident and the vehicle's not drivable, and it [wa]s picked up by a tow company and taken to their lot."[55] Bergiman also testified that "[a]t the time of [the August 2021] letter . . . a manual update was done to remove the -- repossession from the tradeline, but . . . the system next month overrode the manual update and submitted it as a repossession again."[56] Bergiman stated that "[t]he system would override any manual update we did because it is reporting as a repossession. The system will report it as a repossession. Again, involuntary, voluntary, or impound, they're all the same. The system shows it as a repossession."[57] Bergiman was asked whether the bar on removing repossessions was Westlake's own policy:

Q   All right. So when [this response to Plaintiff's dispute] says [that the repossession] can't be deleted or modified, <u>does that mean that Westlake is incapable or that is policy not to delete or modify it?</u>

A   That agent doesn't have the ability to delete a repossession. It would have to be approved.

---

[54]Bergiman Depo., Exhibit 2 to Westlake's MSJ, Docket Entry No. 23, p. 170 lines 11-22.

[55]Id. at 165 lines 3-11.

[56]Id. at 162 lines 7-13.

[57]Id. at 160 lines 21-25, p. 161 line 1.

-13-

> Q   All right. But it doesn't say that it would be kicked up to a [supervisor], it's just [that] it can't be deleted or modified. So I mean, would it be reasonable to assume[], based on this note, that Westlake either does not or will not have the ability to modify [the repossession]?
>
> A   That's incorrect.[58]
>
>     . . .
>
> A   In general -- yes. In general, repossessions are never removed from tradelines.
>
> Q   Okay.
>
> A   So voluntary or involuntary repossession, it will not be removed under any circumstances from the tradeline. It will stay on there for the seven years. The only exception to this would be if the repossession was [due] to an impound. Then it could be removed with approval from, generally, myself.[59]

Bergiman testified that even an impound repossession "can only be removed once the account is paid in full."[60]

## V. Analysis

Westlake argues that "Plaintiff cannot prove a cause of action for violating 15 U.S.C. § 1681s-2(b)" and, in the alternative, that Plaintiff cannot prove that any violations were willful or negligent.[61] Plaintiff responds that the evidence shows that

---

[58] Id. at 150 lines 18-25 (emphasis added), p. 151 lines 1-5.

[59] Id. at 151 lines 7-15.

[60] Id. at 160 lines 10-11.

[61] Westlake's MSJ, Docket Entry No. 23, pp. 7, 10-11.

-14-

Westlake failed to conduct an adequate investigation and that Westlake acted willfully and negligently.[62]

## A. Whether Westlake Violated § 1681s-2(b)

The Complaint alleges that Westlake violated § 1681s-2(b) "by failing to fully and properly investigate Plaintiff['s] dispute reported by Experian . . .; by failing to review all relevant information regarding same; and by failing to correctly report results of an accurate investigation to the credit reporting agencies."[63] Westlake's MSJ argues that its reporting of a repossession was accurate.[64] Plaintiff responds that "Westlake falsely reported a repossession of the automobile despite [the car] being hit by another driver and towed to an impound garage for repair."[65]

As a threshold matter, the court addresses Westlake's argument that it was accurate to report a "repossession" of Plaintiff's car. Westlake offers the testimony of Bergiman that its payment of

---

[62] Plaintiff's Response groups all of Westlake's conduct as part of its investigation, but his Complaint, arguments, and the summary judgment evidence implicate multiple requirements of § 1681s-2(b)(1), including investigation, reporting of results, and modification, deletion, or blocking of inaccurate information.

[63] Complaint, Docket Entry No. 11, p. 4 ¶ 30.

[64] Westlake's MSJ, Docket Entry No. 23, pp. 8-9 ("However, Westlake's reporting that the account information was accurate does not prove it failed to conduct a proper investigation. Westlake's unrefuted testimony confirms Plaintiff's repossession was an impound repossession resulting from an automobile accident that caused the vehicle to be towed and stored.").

[65] Plaintiff's Response, Docket Entry No. 24, p. 4.

-15-

towing and storage fees following an accident is considered a repossession by the CRAs. But this testimony is not consistent with Westlake's (and Bergiman's) August 2021 acknowledgment that the repossession was inaccurate. And contrary to Westlake's statement that its "reporting of Plaintiff's repossession had nothing to do with his payment history," the repossession was reported in a table titled "Payment History Profile."[66] A reasonable jury could conclude that it was inaccurate for Westlake to report a repossession to the CRAs or that it did so incompletely.[67]

If a jury were to conclude that the reporting of a repossession was inaccurate or incomplete, it could reasonably conclude from the evidence that Westlake failed to conduct reasonable investigations in response to at least some of Plaintiff's disputes to CRAs, that Westlake failed to report the accurate or complete findings to the CRAs, and that Westlake failed to modify, delete, or permanently block the reporting of the repossession. As to the duty to investigate (§ 1681s-2(b)(1)(A)),

---

[66] Compare Westlake's MSJ, Docket Entry No. 23, p. 2 with, e.g., Dispute Record, Exhibit 1(A) to Westlake's MSJ, Docket Entry No. 23, p. 20.

[67] The parties do not address whether this is a legal question for the court or a fact question for a jury. There does not appear to be a factual dispute regarding what happened to Plaintiff's car. The parties instead dispute whether it was inaccurate or incomplete to report those facts as a repossession. This definitional dispute involves Bergiman's testimony regarding industry usage of that term, and it is not for the court to evaluate the credibility of that testimony or to weigh it against contrary evidence.

Westlake could have determined from its own records that this was an impound case unrelated to any payment problems. As to the duty to review documents received from the CRAs (§ 1681s-2(b)(1)(B)), there does not appear to be evidence that Westlake failed to review such documents. As to the obligations to report findings of inaccuracy and to modify, delete, or permanently block the reporting of inaccurate information (§§ 1681s-2(b)(1)(C), (D), and (E)), a jury could reasonably find for Plaintiff based on Westlake's acknowledgment that the repossession was inaccurate combined with the length of time and number of subsequent disputes it took for Westlake to remove the repossession. Westlake's MSJ will therefore be denied as to §§ 1681s-2(b)(1)(A), (C), (D), and (E) and granted as to § 1681s-2(b)(1)(B).

## B. Negligent Noncompliance

Westlake argues that its actions were not negligent because its "unrefuted evidence demonstrates that it investigated each dispute, and timely responded, sometimes updating the account information."[68] Plaintiff responds that a reasonable jury "could easily conclude that Westlake acted negligently in failing to correct the defects in Plaintiff's credit report after announcing it would correct those errors."[69]

---

[68]Westlake's MSJ, Docket Entry No. 23, p. 11.

[69]Plaintiff's Response, Docket Entry No. 24, p. 7.

There is evidence from which a jury could find a negligent failure to comply with § 1681s-2(b). Westlake's letters acknowledging its error were followed by multiple disputes over more than a year. Westlake investigated and responded to each, but the evidence indicates that it failed to correct the alleged inaccuracy until early 2023. Moreover, the evidence does not show that it was beyond Westlake's power to correct inaccurate repossessions. Bergiman's testimony is at best ambiguous as to whose "system" overrode the manual correction attempted by Westlake's agent.[70] And the court must view that testimony in the light most favorable to Plaintiff. Westlake's MSJ will therefore be denied as to negligent noncompliance.

## C.  Willful Noncompliance

Westlake argues that there is no evidence of willful noncompliance. Plaintiff responds that Westlake was willful in failing to adequately investigate and in failing to timely correct the error once it was discovered.[71]

Willfulness under § 1681n encompasses both knowing and "reckless disregard of statutory duty[.]" Safeco Insurance Co. of

---

[70]Some parts of Bergiman's testimony are more consistent with this override being a deficiency on Westlake's part. For example, Bergiman stated that although repossessions normally were not removed, there was an exception that hinged on approval by a Westlake supervisor. Bergiman Depo., Exhibit 2 to Westlake's MSJ, Docket Entry No. 23, p. 161 lines 20-24. Bergiman alluded to another internal fix that Westlake could have done, "a monthly update manually," but she did not elaborate. Id. lines 2-4.

[71]Plaintiff's Response, Docket Entry No. 24, pp. 5-7.

America v. Burr, 127 S. Ct. 2201, 2208 (2007). "[A] defendant commits a willful violation and is subject to punitive damages only if it engages in 'willful misrepresentations or concealments.'" Cameron v. Greater New Orleans Fed. Credit Union, 713 F. App'x 238, 240 (5th Cir. 2018) (per curiam). "A failure to adequately investigate and swiftly correct inaccurate information generally does not constitute a willful violation." Id.

The court is not persuaded that a jury could reasonably find willfulness from the evidence of Westlake's investigations and reporting. The fact that Westlake changed its assessment after several complaints and that it subsequently failed to timely correct it's acknowledged error indicate a lack of diligence and, as stated above, could support a finding of negligence. As to Westlake's reporting duty, Plaintiff does not refute Westlake's evidence that it made some effort to remove the repossession at the time of its acknowledgment and that it did, albeit much later, remove the repossession. At most, a jury could find from the evidence "[a] failure to adequately investigate and swiftly correct inaccurate information[.]" Cameron, 713 F. App'x at 240. Westlake's MSJ will therefore be granted as to willfulness.

## VI.  Conclusion and Order

There is evidence from which a reasonable jury could conclude that Westlake violated 15 U.S.C. §§ 1681s-2(b)(1)(A), (C), (D), and (E), but not § 1618s-2(b)(1)(B). Moreover, a reasonable jury could conclude that Westlake's violations were negligent, but there

-19-

is no evidence to support a finding of willfulness. Defendant Westlake Services, LLC dba Westlake Financial Services' Motion for Summary Judgment (Docket Entry No. 23) is therefore **GRANTED** as to § 1681s-2(b)(1)(B) and as to willfulness and is **DENIED** as to all other claims.

**SIGNED** at Houston, Texas, on this the 9th day of April, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE